IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEREK CUNNINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-247-MAB |
| | ) |
| RANDAL MCBRIDE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendant Dr. Randal McBride's motion for summary judgment (Docs. 82, 83). For the reasons set forth below, Dr. McBride's motion for summary judgment is GRANTED (Doc. 82).

## BACKGROUND

Plaintiff Derek Cunningham resided at Big Muddy Correctional Center from May 15, 2019, to September 21, 2021. (Doc. 83, p. 1; Doc. 83-1, pp. 8-9).[1] Just a few weeks before arriving at Big Muddy, Plaintiff was seen by a non-party dentist who observed numerous issues with Plaintiff's teeth and informed Plaintiff that he would need to request extractions (Doc. 83 at p. 2; Doc. 83-3, pp. 11-12).

Dr. McBride was employed as the full-time dentist at Big Muddy from 2014 until May 27, 2021 (Doc. 83 at p. 2; Doc. 83-2, p. 5).[2] Dr. McBride first reviewed Plaintiff's charts

---

[1] Pinpoint citations to transcript pages are made using the CM/ECF auto-generated page number located at the top right of each page.
[2] Dr. McBride's medical notes on Plaintiff, however, continue until at least September 2021 (*See* Doc. 83-3 at p. 28). It is possible that Dr. McBride treated Plaintiff on a part time basis while starting to retire, or

and x-rays on May 16, 2019 (Doc. 83-3 at p. 12). Several days later, Plaintiff submitted a request that stated, "need teeth pulled." (*Id.*). Dr. McBride saw Plaintiff for the first time on May 22, 2019 (Doc. 83 at p. 2; Doc. 93, p. 3). Dr. McBride observed multiple destroyed teeth and several questionably restorable teeth, and stated he would extract several teeth at Plaintiff's next visit (Doc. 83 at pp. 2-3; Doc. 83-3 at p. 12). Dr. McBride also provided Plaintiff with 30 tablets of Clindamycin (an antibiotic) with instructions to take one every six hours and 30 tablets of Ibuprofen (a painkiller) with instructions to take one every 4-6 hours as needed (Doc. 83 at pp. 2-3).

Plaintiff's next appointment with Dr. McBride occurred on June 19, 2019 (Doc. 83 at p. 3). At that appointment, Dr. McBride removed three of Plaintiff's teeth and provided Plaintiff with 30 tablets of Ibuprofen to take every 4-6 hours as needed (*Id.*). More extractions occurred on July 2, 2019, July 9, 2019, August 12, 2019, October 16, 2019, November 27, 2019, December 4, 2019, February 3, 2020, and March 10, 2020 (*Id.* at pp. 3-9). Following these extractions and at several other visits in between them, Dr. McBride typically provided Plaintiff with a 30-tablet pack of painkillers (ibuprofen or acetaminophen) and often also provided a 30-tablet pack of antibiotics (*Id.*).[3]

At some point thereafter, Dr. McBride was unable to perform additional treatments involving extractions, fillings, or denture work due to COVID-19 guidelines imposed by the Illinois Department of Corrections (IDOC) (*Id.* at p. 10; Doc. 83-2 at p. 43).

---

potentially the date he testified to regarding his last date is incorrect. Ultimately, this factual inconsistency is not material to the ultimate resolution of this case.

[3] The Court more thoroughly discusses when and what medication was provided to Plaintiff in the analysis section below.

However, Dr. McBride continued to see Plaintiff and provide him with medications during this period (Doc. 83 at p. 10). On August 25, 2020, Plaintiff reported to Dr. McBride that he cut his gums trying to eat a chicken patty (Doc. 83-1 at p. 61; Doc. 83-3 at p. 22). Plaintiff stated that he needed dentures to chew, but Dr. McBride told him he couldn't extract his teeth or provide Plaintiff with dentures due to COVID-19 guidelines (Doc. 83-1 at p. 61; Doc. 83-3 at p. 22).

On September 9, 2020, Plaintiff wrote an emergency grievance about his dental issues (Doc. 59, pp. 4-5). Around the same time, Plaintiff also wrote to Assistant Warden Stephanie Waggoner asking for her help regarding Dr. McBride's failure to give him medication for the infection and tooth pain he was experiencing (Doc. 83-1, pp. 27-28). Following Plaintiff's letter to the assistant warden, Plaintiff allegedly observed another inmate receive medication from Dr. McBride (Doc. 83-1 at p. 62; Doc. 93-1; Doc. 93-3; Doc. 94, p. 10). However, Plaintiff testified that when he approached Dr. McBride for medicine, he stated, "[t]here is nothing I can do for you. You already wrote a grievance on me. I don't have to do anything for you." (Doc. 83-1 at p. 29).

Subsequently, Dr. McBride saw and prescribed Plaintiff more medication on numerous occasions, including September 16, 2020, September 30, 2020, October 8, 2020, November 17, 2020, November 25, 2020, December 3, 2020, January 7, 2021, January 14, 2021, January 27, 2021, February 18, 2021, and March 11, 2021 (Doc. 83-2 at p. 34). Finally, in 2021, Plaintiff's remaining teeth were extracted, and he was provided with a full set of dentures (Doc. 83 at pp. 11-13; Doc. 83-3 at pp. 24-28).

Additionally, Plaintiff purchased candy, chips, meat sticks, and other food items from the Commissary between May 2019 and September 2021 (*see generally* Doc. 83-4). However, the parties dispute whether Plaintiff ate any of the solid items he purchased during the time period in question (Doc. 83 at p. 20; Doc. 93 at p. 12). Likewise, the records demonstrate that Plaintiff gained weight between September 2019 and September 2021, although the parties again dispute the significance of this fact (*see* Doc. 83-3 at pp. 44, 46, 48, 50, 52; *see also* Doc. 93 at p. 12; Doc. 95 at p. 7).[4]

Plaintiff filed this suit on March 3, 2021 (Doc. 1). Following preliminary review, Plaintiff was permitted to proceed on a deliberate indifference claim against Defendants Dr. McBride and Isaacs (Doc. 7, pp. 2-3). Defendant Isaacs was subsequently dismissed after successfully moving for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies (Doc. 59). Thereafter, Dr. McBride filed the instant motion for summary judgment and memorandum in support on July 14, 2023 (Docs. 82, 83). Plaintiff filed a response in opposition on November 21, 2023 (Doc. 93). Finally, Dr. McBride filed a response to Plaintiff's statement of facts, and a reply in support on December 5, 2023 (Docs. 94, 95).

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[4] The Court does not view either of these disputes – whether Plaintiff ate the solid food he purchased at the commissary and the significance of his weight gain – as material to the ultimate resolution of this case and therefore, the Court did not rely on either in concluding that no reasonable jury could find in favor of Plaintiff.

fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

## DISCUSSION

Dr. McBride argues he is entitled to summary judgment because Plaintiff cannot demonstrate all the required elements of a deliberate indifference claim (*see generally* Doc. 83). In response, Plaintiff contends that the evidence establishes that Dr. McBride was deliberately indifferent for failing to provide him with sufficient medication and failing to prescribe a soft-food diet (*see generally* Doc. 93). Plaintiff further asserts that any remaining factual disputes are best left for a jury (*Id.*).

Pursuant to the Eighth Amendment, prison officials "must provide humane conditions of confinement" by, among other things, "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must provide healthcare to incarcerated persons who cannot obtain healthcare on their own. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d

647, 653 (7th Cir. 2021). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (explaining that the first element is objective while the second element is subjective).

Specifically, to satisfy the first, objective element, "[a] medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (quoting *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012)). Meanwhile, to satisfy the second, subjective element, "the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.* It is not "enough to show that a prison doctor committed malpractice." *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Instead, Plaintiff was required to show that Dr. McBride was essentially "criminally reckless" by ignoring a known risk. *McGee*, 721 F.3d at 481; *see also Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard.").

Moreover, in the dentistry context, "[a] dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015). Furthermore, "when making the determination 'whether the course of treatment was so far afield as to allow a jury to infer deliberate indifference[,]' the court must focus on what the doctor knew at the time of treatment." *Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at *16 (N.D. Ill. Mar. 18, 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008)).

Here, Plaintiff points to sufficient evidence to demonstrate an objectively serious medical condition. Plaintiff and Defendant both provided the Court with evidence of Plaintiff's prolonged dental issues, accompanying pain, and extraction procedures (*see, e.g.*, Doc. 83-3). *See also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). Thus, the central question now for the Court is whether there is sufficient evidence to allow a reasonable jury to find that Dr. McBride was deliberately indifferent to Plaintiff's serious medical condition.

   I.   *Sufficiency of Provided Medication*

Plaintiff first argues Dr. McBride was deliberately indifferent to his serious medical condition because: (1) Dr. McBride did not provide Plaintiff with enough pain medication to last him until his next appointment, and (2) Dr. McBride allegedly withheld medication in retaliation for Plaintiff writing a complaint about Dr. McBride (Doc. 93 at pp. 10-13). In response, Dr. McBride contends that he repeatedly visited Plaintiff, treated

him, and provided him with pain medication (Doc. 95 at pp. 2-4). Dr. McBride further argues that Plaintiff has not demonstrated that he was in pain at the time Dr. McBride allegedly retaliated against him by refusing to provide him with pain medication (*Id.*). Additionally, Dr. McBride claims Plaintiff failed to demonstrate that his situation was similar to that of the other inmate who allegedly received medication from Dr. McBride (*Id.*).

Although deliberate indifference to prolonged, unnecessary pain alone can be the basis for an Eighth Amendment claim, "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation marks and citation omitted); *see also Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Admittedly, Plaintiff has pointed to evidence tending to demonstrate that, at times, Dr. McBride did not provide him with enough medication to last until his next appointment (Doc. 83-2 at p. 33). Specifically, Plaintiff relies upon Dr. McBride's testimony that the 30-tablet packs (known as "blister packs") provided to Plaintiff were only supposed to last 8 to 10 days, and he could not always see Plaintiff again within 8 to 10 days (*Id.*).

Crucially, however, courts "look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties*, 836 F.3d at 728; *see also Bradford v. Wexford Health Sources, Inc.*, No. 16 C 8112, 2020 WL 586810, at *10 (N.D. Ill. Feb. 6, 2020) (Where a doctor referred inmate to an

outside surgeon, it could not be said that the doctor was "doggedly persisting in a course of treatment known to be ineffective."). Here, the record unequivocally demonstrates that Dr. McBride treated Plaintiff and provided him with medication on many occasions, including during the pandemic (*see generally* Doc. 83-3). Furthermore, regarding the frequency and dosage of medication, Dr. McBride testified that: (1) it was not possible for him to repeatedly see Plaintiff every 8 to 10 days due to prison logistics (*Id.* at pp. 36-37); (2) that Plaintiff's pain medication was to be taken on an as needed basis, not necessarily around the clock (*Id.* at p. 37); and (3) he was only permitted to dispense one blister pack every session (*Id.* at p. 39). In other words, Dr. McBride provided Plaintiff with as many painkillers as he could, as often as he could. This, in combination with the totality of Dr. McBride's care for Plaintiff over the course of several years which is outlined above (*supra* pp. 1-4), does not demonstrate deliberate indifference to Plaintiff's serious medical needs. In addition, when dealing with a similar allegation based upon the denial of pain medication, the Seventh Circuit held that "a ten-day delay in filling a medication prescription does not in this case establish deliberate indifference. Moreover, failure to administer prescription medicine alone does not demonstrate deliberate indifference." *Warman v. Funk*, 119 F. App'x 789, 791 (7th Cir. 2004).

Furthermore, delays in Dr. McBride's ability to treat and see Plaintiff due to COVID-19 cannot be attributed to Dr. McBride. *See, e.g.*, *Hoskins v. Chapman*, No. 3:20-CV-00508-GCS, 2022 WL 558291, at *7 (S.D. Ill. Feb. 24, 2022) (delay in providing non-emergent dental care due to COVID-19 restrictions was not attributable to the defendant doctor and thus, did not constitute deliberate indifference). Likewise, limitations on Dr.

McBride's ability to see Plaintiff and provide larger quantities of medication due to IDOC and facility policies likewise cannot be attributed to Dr. McBride. *Id.* And while Plaintiff contends Dr. McBride denied him medication in retaliation for Plaintiff's complaints, Plaintiff's two written statements provided in support of this contention do not demonstrate that Dr. McBride was deliberately indifferent to Plaintiff's serious medical needs because neither statement claims that Plaintiff was in pain at the time of his request or that his dental issues were comparable to the other inmate he claims received medication (*see* Docs. 93-1, 93-3). Furthermore, the record evinces that Dr. McBride did prescribe Plaintiff additional medication shortly after this alleged incident occurred in August 2020 (*see* Doc. 83-2 at p. 34) (discussing at least two appointments to maintain Plaintiff's medicine doses that occurred in September 2020).

Finally, the Court finds Plaintiff cannot demonstrate that the gaps between the amount of provided medications and appointments evince deliberate indifference because the pain medications provided by Dr. McBride were to be taken "as needed" (*see* Doc. 93 at p. 4; Doc. 83-3).[5] Consequently, while Dr. McBride testified that a blister pack could be finished within 8 to 10 days, based upon his own instructions, there would be no way for Dr. McBride to know that Plaintiff was actually out at the earliest possible time. Furthermore, any argument that Dr. McBride should not have provided them to be taken "as needed" is really just a challenge to Dr. McBride's prescribed course of

---

[5] The Court also notes that the painkillers provided by Dr. McBride were available to Plaintiff via other avenues. For example, on June 15, 2020, Plaintiff bought Acetaminophen from the commissary (Doc. 83-4 at p. 28). This provides further evidence that Dr. McBride was not deliberately indifferent because he believed that the painkillers were also available to Plaintiff at the commissary (Doc. 83-2 at p. 65).

treatment, which does not give rise to a constitutional claim because there is no evidence to support a claim that Dr. McBride's medical treatment was so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes*, 95 F.3d at 592; *see also Dent v. McBride*, No. 3:15-CV-740-NJR-DGW, 2017 WL 4224029, at *5 (S.D. Ill. Sept. 22, 2017) ("Again, this is not a situation where Dent's condition was being ignored or where Dr. McBride persisted in an ineffective course of treatment."). In sum, based on the totality of the care provided by Dr. McBride under the circumstances, no reasonable jury could conclude that Dr. McBride was deliberately indifferent to Plaintiff's serious medical condition regarding the sufficiency of the medication provided by Dr. McBride.

  II.  *Soft-Food Diet*

Plaintiff also argues that Dr. McBride was deliberately indifferent to his serious medical need based upon his failure to prescribe a soft-food diet (Doc. 93 at p. 12). In response, Dr. McBride contends that, in his medical opinion, a soft-food diet was not necessary (Doc. 95 at p. 4).

The case of *Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at *16 (N.D. Ill. Mar. 18, 2016), from the Northern District of Illinois, dealt with a very similar issue. In *Diaz*, the plaintiff claimed the defendant dentist's failure to prescribe a soft-food diet demonstrated deliberate indifference because he knew of the plaintiff's need for such. *Id.* The court found that "with regard to the soft food diet, while arguably Dr. O'Brien became aware at some point that plaintiff was having difficulty chewing his food, *see* [109] at ¶ 34, it is undisputed that plaintiff did not request a soft–food diet from Dr.

O'Brien and the only expert testimony proffered is that a soft–food diet was not medically necessary in this case." *Id.* Accordingly, the court held that the facts in the record were insufficient to establish that no minimally competent professional would have responded in the same way as the defendant dentist did under the circumstances. *Id.*

Here, just like in *Diaz*, the only testimony as to the medical necessity of a soft-food diet comes from Dr. McBride, who stated he did not believe a soft-food diet was necessary at the time (Doc. 83-2 at p. 40). In other words, Dr. McBride's testimony as to the necessity of a soft-food diet is unchallenged. Consequently, because the record does not contain evidence supporting the claim that "no minimally competent professional would have so responded under the circumstances," Dr. McBride's treatment decision to not prescribe a soft-food diet is "entitled to deference." *McGee*, 721 F.3d at 481 (internal quotation marks and citations omitted). Furthermore, Plaintiff alleges just one occasion in which he complained about his ability to eat solid foods to Dr. McBride (*see* Doc. 83-1 at p. 61; Doc. 83-3 at p. 22). This is significant because it does not support a claim that Dr. McBride "doggedly persisted in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005); *see also Williams v. Wexford Health Sources, Inc.*, No. 3:18-CV-87-MAB, 2021 WL 3722799, at *8 (S.D. Ill. Aug. 23, 2021) (denying motion for summary judgment where Plaintiff repeatedly complained to the dentist about pain, bleeding gums, and difficulty eating during roughly 27 month delay in beginning denture fabrication process, where the defendants provided no explanation for the lengthy delay).

In sum, no reasonable jury could conclude that Dr. McBride was deliberately indifferent to Plaintiff's serious medical needs on either the alleged lack of pain medication or for declining to prescribe a soft-food diet. *See Owens v. Duncan*, 788 F. App'x 371, 375 (7th Cir. 2019) ("Even if the court had recruited counsel, a medical expert's analysis of this record—showing frequent, responsive care and pain management—could amount only to a differing opinion about the best course of treatment, which cannot support a finding of deliberate indifference.").

## CONCLUSION

For the reasons explained above, Dr. McBride's motion for summary judgment is **GRANTED** (Doc. 82). Additionally, because Defendant Debbie Isaacs has previously been granted summary judgment based upon Plaintiff's failure to exhaust administrative remedies (Doc. 59), this case is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  March 28, 2024**

s/ Mark A. Beatty  
**MARK A. BEATTY**  
**United States Magistrate Judge**